Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MMG I PR CDGY, LLC<br><br>Recurrida<br><br>v.<br><br>KING´S SPORT WEAR & PRO-SHOP, INC.; FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC), como Síndico de DORAL MORTGAGE CORPORATION; RUSHMORE LOAN MANAGEMENT SERVICES, LLC; BANCO POPULAR DE PUERTO RICO; y FIRSTBANK PUERTO RICO; FULANO Y MENGANO DE TAL, como posibles tenedores del pagaré hipotecario cuya cancelación se solicita<br><br>Demandados<br><br>**EDWIN RODRÍGUEZ RODRÍGUEZ, OLGA CANCEL RIVERA y LA COMUNIDAD DE BIENES COMPUESTA POR AMBOS**<br><br>**Peticionarios** | KLCE202301420 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de CAGUAS<br><br>Caso Núm.:<br>CG2020CV01358<br><br>Sobre:<br>Cancelación Pagaré Hipotecario Extraviado |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de enero de 2024.

El 14 de diciembre de 2023, El Sr. Edwin Rodríguez Rodríguez, la Sra. Olga Cancel Rivera y la Comunidad de Bienes compuesta por ambos instaron el recurso de epígrafe (en adelante, los peticionarios). En este, nos solicitan la revocación de varias órdenes y/o resoluciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI o

foro primario). Por virtud de estas, el TPI denegó la solicitud de desestimación por falta de legitimación activa que estos presentaron, rechazó la petición de reconsideración que sobre estos instaron, así como les anotó la rebeldía.

Evaluado el legajo apelativo, por las razones que adelante consignamos, **denegamos** la expedición del recurso.

I.

El 8 de julio de 2020, PRCI Loan, LLC (en adelante, PRCI) instó *Demanda* sobre cancelación de pagaré hipotecario extraviado contra varios demandados, entre ellos, los peticionarios. En esta, indicó que las personas demandadas se incluyeron como parte demandada en calidad de posibles tenedores conocidos del pagaré, cuya cancelación solicitaba y describió el mismo de la siguiente manera:

> "PAGARÉ a favor de Doral Mortgage Corporation, o a su orden, por la suma principal de $89,060.00, con intereses al 7-7/8% anual y vencimiento 1 de abril de 2009, ante el notario Hiran Amundaray Rivera, el 11 de marzo de 1994. Garantizado con hipoteca constituida en la misma fecha y ante el mismo notario mediante la Escritura Número 312, inscrita al folio 182 del tomo 1300, sobre la propiedad inmueble que se describe a continuación."

> "URBANA: Solar radicado en la Urbanización Altos de la Fuente, localizado en el barrio Turabo del [término] municipal de Caguas, Puerto Rico, que se describe en el plano de inscripción de la urbanización con el número, área y colindancias que se relacionan a continuación: Solar número K-cuatro (K-4) con una cabida superficial de cuatrocientos dieciocho metros cuadrados con sesenta centésimas de otro (418.60) m/c, en lindes por el NORTE, en dieciséis metros con diez centésimas de otro (16.10 m) con la calle [número] ocho; por el SUR, en dieciséis metros con diez centésimas de otro (16.10 m) con predio de hermanos Flores Blandino; por el ESTE, en veintiséis (26.00 m) metros con el solar [número] K-tres (K-3); y por el OESTE, en veintiséis metros con el solar K-cinco (K-5). Sobre este solar enclava una estructura construida de concreto armado y cemento dedicado a vivienda para una familia.

> Consta inscrita al folio 180 del tomo 1300 de Caguas, finca 46,001, Registro de la Propiedad de Caguas, Sección Primera.

PRCI indicó que el crédito garantizado por el pagaré antes descrito fue satisfecho al haberse saldado su acreencia, que este no ha sido cancelado y que se realizó una búsqueda exhaustiva para localizarlo, sin darse con su paradero, presumiéndose, pues, que se extravió. Así, adujo que, según su

mejor conocimiento, la parte demandada debió ser la última tenedora de buena fe del pagaré y que el mismo no se ha negociado, cedido, endosado o de otro modo transferido. Por ello, alegó que dicha parte continuaba siendo su único dueño y titular. En virtud de todo esto, solicitó que luego de los trámites de rigor pertinentes, se dictara sentencia disponiendo de la cancelación del pagaré, así como que se ordenara la cancelación total de la hipoteca que lo garantiza y grava el inmueble antes descrito.

Habiendo comparecido inicialmente el 28 de septiembre de 2020 mediante *Moción asumiendo representación legal y en solicitud de término,* el 10 de febrero de 2021, los peticionarios presentaron una *Solicitud de desestimación por falta de legitimación activa de la parte demandante*. Según allí señalaron, de las propias alegaciones de la demanda surge que todos los codemandados son directa o indirectamente partes actoras en el caso, y tienen algún tipo de interés o legitimación, ya sea pasiva o activa, para ser parte de este caso. No obstante, adujeron que del escrito de la demanda, no se incluyó una alegación que señale que la parte demandante PRCI Loan, LLC tiene algún crédito, interés o acreencia a su favor respecto al pagaré, cuya cancelación se solicita, por lo que reclamó que esta carecía de legitimación activa para presentar esta demanda.

El 7 de abril de 2021, PRCI se opuso a la solicitud de desestimación de los peticionarios. Al así hacer, señaló que actualmente en un pleito independiente demandó a King's Sport Wear y a los peticionarios en cobro de dinero en ejecución de un pagaré; que este pagaré actualmente tiene un rango en segundo lugar después de una hipoteca que ya fue pagada en su totalidad, que la demanda de epígrafe se radicó con el propósito de cancelar el pagaré de la hipoteca de forma que el pagaré que tiene a su favor, advenga en rango preferente y que la razón por la que los peticionarios reclaman la falta de legitimación es una estrategia para obstaculizar el que se pueda cobrar lo que se le debe. Por su parte, el 5 de mayo de 2021, los

peticionarios sometieron *Réplica a Moción en oposición a solicitud de desestimación por falta de legitimación activa de la parte demandante,* en la que niegan que el pleito en cobro de dinero instado por PRCI le brinde legitimación activa para instar el caso de epígrafe.

El 14 de marzo de 2022, se solicitó que la parte demandante fuera sustituida por MMG, autorizándose esta el día 16. Luego, el 15 de noviembre de 2022, MMG sometió *Moción reiterando Oposición a solicitud de desestimación por falta de legitimación activa de la parte demandante; Moci[ó]n uni[é]ndose a representaci[ó]n legal.* Así las cosas, el 26 de octubre de 2023, el foro primario emitió *Orden* mediante la cual determinó que la parte demandante tiene jurisdicción para instar el presente caso, ordenándole a informar el curso a seguir en el caso.[1] El 8 de diciembre de 2023, MMG sometió *Moción en cumplimiento de Orden y en solicitud de sentencia* en la que, entre otras cosas, indicó que, habiéndose denegado la solicitud de desestimación y la reconsideración sometida por los peticionarios, estos no han comparecido como posibles tenedores del pagaré objeto de la reclamación. Por esta razón, afirmó que procedía que se les anotara la rebeldía y, en virtud del derecho citado en el escrito, se dictara sentencia en su contra y a favor de MMG.

El 8 de diciembre de 2023, notificada el 11, el TPI emitió *Orden* mediante la cual le anotó la rebeldía a los peticionarios. De la misma manera, le concedió término a MMG para someter certificación registral, por no ser suficiente un estudio de título. Los peticionarios instaron una solicitud de reconsideración en cuanto a la anotación de rebeldía. Así, reclamó que previo a anotarles la rebeldía, el foro primario debió adjudicar la solicitud de imposición de fianza no residente a MMG que presentó en el caso. Asimismo, afirmaron que no procedía la anotación de rebeldía, ya que

---

[1] El 10 de noviembre de 2023, los peticionarios solicitaron reconsideración de la determinación de jurisdicción. Esta fue denegada mediante *Orden* del mismo día, notificada el 14.

han comparecido desde un inicio en todas las instancias que se les ha requerido o que han estimado necesario.

El 14 de diciembre de 2023, los peticionarios instaron el recurso de epígrafe y le adjudicaron al foro primario equivocarse al:

> […] declarar No Ha Lugar la solicitud de desestimación por falta de legitimación activa de la parte demandante presentada por los peticionarios.
>
> […] declarar No Ha Lugar la solicitud de reconsideración presentada por los peticionarios.
>
> […] no considerar la solicitud de Orden para imponer fianza de No-residente a MMG y no paralizar el caso hasta que la fianza sea prestada.
>
> […] no considerar la oposición a la moción en cumplimiento de orden y solicitud de sentencia presentada por MMG y emitir la *Orden/Resolución* de 8 de diciembre de 2023 anotando la rebeldía a los peticionarios.[2]

En la misma fecha, los peticionarios sometieron una *Urgente solicitud de auxilio de jurisdicción y en cumplimiento con la Regla 79(e) del Reglamento de este Honorable Tribunal de Apelaciones* en la que solicitaron la paralización de los procedimientos. Al atenderla, ese mismo día emitimos *Resolución* declarando No Ha Lugar la paralización solicitada y ordenándole a la parte recurrida a comparecer en 10 días para presentar su posición.

---

[2] Cabe señalar que, tal cual los peticionarios propiamente señalan en la página 18 de su recurso, el 12 de diciembre de 2023, estos sometieron una *Solicitud de reconsideración de anotación de rebeldía respecto a los codemandados aquí comparecientes; y en solicitud de que se imponga fianza de no-residente a MMG I PR CDGY, LLC y paralice el caso*. Asimismo, como igual apuntan, **a la fecha de la radicación del recurso, este escrito no había sido atendido por el foro primario.** Un examen de este escrito nos permite apreciar que, mediante el mismo, los peticionarios pidieron al foro primario que reconsiderara las actuaciones que atacan ante este Tribunal de Apelaciones en el señalamiento y la discusión de su tercer y cuarto error.

Es hartamente conocido que, cuando la parte adversamente afectada por una resolución u orden presenta ante el TPI una específica y bien fundamentada moción de reconsideración dentro del término de cumplimiento estricto de quince (15) días que establece la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V R. 47, el término para recurrir en revisión judicial queda interrumpido. Este plazo, comenzará a contar nuevamente desde la fecha en la que se archiva en autos copia de la notificación del dictamen en el que el Tribunal de Primera Instancia disponga definitivamente de la reconsideración. *Íd.*

No habiéndose resuelto al momento de la presentación del recurso los asuntos levantados por los peticionarios en sus últimos 2 errores en cuanto a la anotación de rebeldía, así como sobre la imposición de una fianza no residente, carecemos de jurisdicción para evaluar estos planteamientos por haberse sometido estas controversias prematuramente ante nuestra consideración.

En cumplimiento con lo ordenado, el 26 de diciembre de 2023, MMG sometió *Oposición a "certiorari"*. El 2 de enero de 2024, los peticionarios replicaron dicho escrito.

II

**-A-**

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. McNeil Healthcare v. Mun. Las Piedras I, *supra*; Scotiabank v. ZAF Corp et al., 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." 800 Ponce de León v. AIG, *supra*. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones

de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." McNeil Healthcare v. Mun. Las Piedras I, *supra*.

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. McNeil Healthcare v. Mun. Las Piedras I, *supra*, a la pág. 404; 800 Ponce de León v. AIG, *supra*. Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[3] Estos, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019). La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. de Caguas v. JRO Construction, *supra*.

-B-

El concepto de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el poder judicial. Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 60 (2009). De modo que la intervención del tribunal tendrá lugar únicamente si existe una controversia genuina surgida entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas. Id, citando a Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 932 (2011). La capacidad que se le requiere a la parte promovente de una acción para

---

[3] Estos son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante se conoce como legitimación activa. Ramos, Méndez v. García García, 203 DPR 379 (2019). Esta, se refiere a la condición o atributo que permite a una persona comparecer ante un foro judicial o administrativo a reclamar un derecho. P.P.D. v. Gobernador I, 139 DPR 643, 665-666 (1995).

-C-

La cancelación de un asiento es "la operación registral que tiene por objeto dejar sin efecto y publicar la pérdida de vigencia de un asiento anterior". Popular Mortgage v Registrador, 181 DPR 625 (2011). Como regla general, para cancelar un asiento es necesario el consentimiento de los titulares afectados por el mismo. Si estos no consienten, podrá acudirse a los tribunales para que éstos ordenen la cancelación correspondiente. *Íd.*

La Ley 210-2015 titulada *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado* (en adelante, Ley 210-2015) regula en su Artículo 121 lo concerniente a la cancelación de hipoteca en garantía de instrumentos negociables o títulos transferibles por endoso; procedimiento; escritura de cancelación.[4] Así, y sobre el particular, este dispone como a continuación transcribimos:

> Las inscripciones de hipoteca constituidas para garantizar obligaciones representadas por instrumentos negociables o títulos transferibles por endoso o pagaderos al portador, se cancelarán total o parcialmente mediante escritura otorgada por la persona con derecho a exigir el cumplimiento del instrumento de los títulos expresados. Solamente en los casos de prescripción de hipoteca no será necesaria la cancelación del instrumento conforme lo antes indicado. Aun cuando se haya extinguido el crédito hipotecario y salvo el caso dispuesto en el Artículo 120 de esta Ley, los registradores no cancelarán la inscripción de la hipoteca sino en virtud de escritura pública según establecido en este Artículo. En las escrituras de cancelación de instrumentos negociables pagaderos a la orden o títulos transferibles por endoso será obligación del notario hacer constar que el compareciente es una persona con derecho a exigir el cumplimiento del instrumento. En todo caso deberá hacerse constar en la escritura la identificación de los instrumentos y su inutilización o reducción parcial en el acto del otorgamiento.

---

[4] 30 LPRA Sec. 6171.

De otra parte, el artículo 122 de la Ley 210-2015 dispone que, si todos o algunos de los instrumentos negociables se extraviaron o fueron destruidos, únicamente podrán cancelarse dichas inscripciones mediante la presentación de la sentencia final y firme debidamente certificada en la que se declaren extinguidas las obligaciones representadas por los referidos instrumentos.[5]

El procedimiento para cancelar una hipoteca en garantía de un pagaré requiere que el tenedor legal del pagaré- quien está llamado a otorgar el correspondiente instrumento público- acuda a un notario para que este último autorice la correspondiente escritura de cancelación. El notario, deberá hacer constar que el deudor es tenedor por endoso, o que el último endoso se hizo en blanco. Popular Mortgage v. Registrador, *supra*, a la págs. 635-636. y se alegue que el último poseedor conocido del pagaré fue el deudor. Cuando la acción judicial la insta un tercero, deberá demandarse a ese último poseedor conocido, pero, además, deberá demandarse al último acreedor conocido de las obligaciones representadas por el pagaré, así como al acreedor que conste en el Registro de la Propiedad, cuando este último sea una persona distinta al primero. El tribunal deberá comprobar que el pagaré se extravió en manos del alegado último poseedor conocido.

### III

Tal como apuntamos al comienzo de esta *Resolución*, mediante el señalamiento y la discusión de sus primeros 2 errores estos persiguen la revocación de la denegatoria de la solicitud de desestimación que instaron basada en un reclamo de falta de legitimación activa por parte de PRCI, así como de MMG, para instar el pleito.[6] Para ello, en síntesis, reproducen los

---

[5] 30 LPRA Sec. 6172.

[6] Siendo ello así, estamos ante una decisión interlocutoria que atiende uno de los asuntos por los que, conforme la Regla 52.1 de Procedimiento Civil, *supra,* podemos expedir un auto de *certiorari*.

argumentos levantados ante el TPI en cuanto a que la *Demanda* no contiene alegación alguna que señale que PRCI- o MMG como sustituta- tiene algún crédito, interés o acreencia a su favor respecto al pagaré cuya cancelación se solicita. Ante ello, argumentan que ninguna de estas entidades cumplió con demostrar como exige nuestro ordenamiento jurídico: que ha sufrido un daño claro y palpable; que el daño es real, inmediato y preciso, no abstracto o hipotético; que existe una conexión entre el daño sufrido y la causa de acción ejercitada y que la causa de acción surge al palio de la constitución o una ley.

Hemos deliberado metódicamente los méritos del recurso al amparo del derecho consignado en la presente *Resolución*. De igual manera, consideramos el desarrollo del pleito de epígrafe mediante el estudio del expediente judicial a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC). Efectuado este ejercicio, no encontramos fundamentos jurídicos válidos para intervenir con la determinación recurrida. Esto, de conformidad con los criterios que guían nuestra discreción para ejercer nuestra facultad revisora en el auto discrecional del *certiorari* establecidos en la Regla 40 de nuestro Reglamento, *supra*. Así, no encontramos que la decisión emitida por el TPI sea contraria a derecho, ni que en ella haya mediado prejuicio o parcialidad. Tampoco estimamos que la etapa del procedimiento en que se presenta sea la más propicia para su consideración.

IV

Por las razones antes consignadas, denegamos expedir el auto de *certiorari* solicitado por el Sr. Edwin Rodríguez Rodríguez, la Sra. Olga Cancel Rivera y la Comunidad de Bienes compuesta por ambos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones